Andrew R. Wolf, Esq. - NJ Attorney ID No. 018621995
The Wolf Law Firm, LLC
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ  08902
Tel. 732-545-7900
Fax: 732-545-1030
awolf@wolflawfirm.net

*Attorneys for Plaintiff and those similarly situated*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JEFFREY GUNDELL, on behalf of himself and others similarly situated,<br><br>　　　　　　Plaintiff,<br>　vs.<br><br>SLEEPY'S, LLC, DAVID ACKER, ADAM BLANK and TEMPUR-PEDIC NORTH AMERICA, LLC,<br><br>　　　　　　Defendants. | Civil Action No.: 3:15-cv-07365-MAS-DEA<br><br>**FIRST AMENDED**<br>**CLASS ACTION COMPLAINT** |

Plaintiff Jeffrey Gundell states for his Complaint as follows:

**PRELIMINARY STATEMENT**

　　　1.　　This putative class action charges the Sleepy's Defendants (a mattress retail chain and its principals) with violating the Delivery of Household Furnishings Regulations (the "Furniture Delivery Regulations"), N.J.A.C. 13-45A-5.1, *et seq*. and thereby violated the Consumer Fraud Act ("CFA") at N.J.S.A. 56:8-4  by using sales forms that misstated the customer's rights under the Regulations in the event of untimely or nonconforming delivery, and that otherwise included numerous formal and substantive violations of the Regulations mandatory notice requirements.

　　　2.　　As a remedy for these violations, Plaintiff seeks statutory damages for himself and others similarly situated under Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 *et seq*., which prohibits businesses from using sales forms that violate other New Jersey laws, and which provides a right of action to consumers who are given such forms for statutory damages of not less than $100. .

3.     Plaintiff also seeks damages for himself against Defendant Tempur-Pedic and the Sleepy's Defendants based on their unconscionable commercial practices and other unlawful acts related to the marketing, advertising and sale to him of a mattress and adjustable base.

## PARTIES

4.     Plaintiff Jeffrey Gundell resides in Monroe Township, Middlesex County, New Jersey.

5.     Defendant Sleepy's, LLC (hereinafter, "Sleepy's") is headquartered in Hicksville, New York and owns and operates a store located at 299 Route 18, East Brunswick, Middlesex County, New Jersey and approximately 143 other retail stores throughout New Jersey.

6.     Defendant David Acker is the President and /or Chief Executive Officer of Sleepy's.

7.     Defendant Adam Blank is the Chief operating Officer and General Counsel of Sleepy's.

8.     Defendant Tempur-Pedic North America, LLC, (hereinafter, "Tempur-Pedic") is a foreign limited liability company headquartered in Lexington, Kentucky.

## FACTUAL ALLEGATIONS

9.     David Acker and/or Adam Blank own all or part of Sleepy's.

10.    David Acker and Adam Black are principals of Sleepy's.

11.    David Acker and/or Adam Blank set the policies and practices of Sleepy's.

12.    David Acker and/or Adam Blank set the policies and practices of Sleepy's regarding the creation and use of form sales documents presented to Sleepy's customers when its merchandise is sold for future delivery to consumers in New Jersey.

13.    David Acker and/or Adam Blank adopted a course of conduct regarding the creation and use of form sales documents presented to Sleepy's customers when its merchandise is sold for future delivery to consumers in New Jersey that violate the Furniture Delivery Regulations .

14.    David Acker and/or Adam Blank are the persons at Sleepy's responsible for setting all the policies and practices of Sleepy's complained of herein including the practices that resulted in Plaintiff's class claims and individual claims (hereinafter, "the Sleepy's Defendants" shall refer to Sleepy's, David Acker and Adam Blank).

15.    The Sleepy's Defendants sell furniture for future delivery to consumers throughout New Jersey in several ways including but not limited to through its approximate 144

stores, online through its website at www.sleepys.com, and by telephone at 1-866-SLEEPYS and 1-800-MATTRES.

16. At all times relevant to this matter, the Sleepy's Defendants sold furniture for future delivery to consumers throughout New Jersey in several ways including but not limited to through its network of retail stores, online through its websites and by telephone.

17. On or about February 16, 2013, Plaintiff placed an order for a Tempur-Pedic Weightless Supreme king size mattress at the Sleepy's store in East Brunswick, New Jersey, for delivery on or about March 2, 2013. Plaintiff received two sales documents from the Sleepy's Defendants related to the 2013 mattress purchase, a two page "Customer Invoice" and a "Sales Order Receipt". The Sales Order Receipt states on the bottom "(Page 1 of 2)" but Plaintiff only has that one page. Attached as **Exhibit A** is a copy of the Customer Invoice and the Sales Order Receipt that.

18. Tempur-Pedic maintains a website which advertises that its Tempur-Pedic Ergo Plus Adjustable Base is compatible with Plaintiff's Tempur-Pedic Weightless Supreme king size mattress. Attached as **Exhibit B** is a copy of the Tempur-Pedic advertisement from their website.

19. Tempur-Pedic advertises the Ergo Plus Adjustable Base on its website www.tempurepedic.com as compatible with the following mattresses:

"Previous models: all earlier Tempur-Pedic mattress models except GrandBed"

20. Prior to purchasing the Ergo Plus Adjustable Base, Plaintiff visited Tempur-Pedic's website, saw and relied on Tempur-Pedic's advertisement regarding the base's compatibility with his mattress.

21. On May 24, 2015, Plaintiff visited the Sleepy's store in East Brunswick, and spoke with Pete, a Sleepy's salesman. Plaintiff first requested that Pete verify in Sleepy's system to see what exact mattress he purchased in February 2013. He confirmed that Plaintiff's mattress was a Tempur-Pedic Weightless Supreme king size mattress and further confirmed that it was compatible with the Tempur-Pedic Ergo Plus Adjustable Base.

22. Plaintiff was also informed by Pete, the Sleepy's salesman that the Tempur-Pedic Ergo Adjustable Base would have only one retaining bar, identical to the floor model that Plaintiff viewed at the Sleepy's store in East Brunswick.

23. Plaintiff placed an order for a Tempur-Pedic Ergo Plus Adjustable Base at the Sleepy's store in East Brunswick, New Jersey on or about May 24, 2015, for future delivery and received a sales document. Plaintiff received a two page sales document related to the May 2015 purchase that was called a "Sales Order Invoice." Attached as **Exhibit C** is a copy of the May 2015 Sales Order Invoice for his purchase of the adjustable base.

24. On May 30, 2015, the Tempur-Pedic Ergo Plus Adjustable Base was delivered to Plaintiff's home and Plaintiff's Tempur-Pedic Weightless Supreme King mattress was installed on it.

25. On May 30, 2015, immediately after the delivery, Plaintiff contacted Pete, the Sleepy's salesman, to reject delivery of the adjustable base because it had two retaining bars instead of one retaining bar as advertised at the Sleepy's East Brunswick store and as represented by the salesman. Plaintiff was informed that the regional manager would contact him.

26. On May 31, 2015, Plaintiff attempted to use the Tempur-Pedic Ergo Plus Adjustable Base using the remote included with the base to elevate the bed when Plaintiff noticed that his Tempur-Pedic mattress was not conforming to the position of the adjustable base. Attached as **Exhibit D** is a photograph taken by Plaintiff of the mattress not conforming to the adjustable base.

27. On June 2, 2015, Plaintiff was contacted by another Sleepy's representative, Eric, whom Plaintiff advised that he would like to return the adjustable base for a refund because it was not working as advertised in the East Brunswick Sleepy's store. Plaintiff was informed that someone would be sent to inspect the unit.

28. On June 7, 2015, two representatives from Sleepy's came to Plaintiff's home to inspect the Tempur-Pedic Ergo Plus Adjustable Base, and confirmed to Plaintiff that his Tempur-Pedic mattress and the recently purchased adjustable base were not working properly in conjunction with each other.

29. While the two Sleepy's representatives were at Plaintiff's home on June 7, 2015, one of them made a telephone call to another Sleepy's representative, during which Plaintiff overheard him say that Plaintiff's Tempur-Pedic mattress and adjustable base were not working in conjunction with each other as they should.

30. During the telephone call on June 7, 2015, the Sleepy's representative at the Plaintiff's home gave the telephone to Plaintiff to speak directly with the representative at Sleepy's offices. Plaintiff spoke with her and she confirmed that she was writing down that Plaintiff's Tempur-Pedic mattress and adjustable base were not working in conjunction with each other as they were supposed to.

31. Later that day on June 7, 2015, after the inspection by Sleepy's, Plaintiff was contacted by a man named Angel who identified himself as a Sleepy's regional manager. Plaintiff informed him again of the nonconformity issues with the adjustable base and the mattress, and again expressed his desire to return the adjustable base for a refund.

32. During that call, Angel took a position opposite to what Plaintiff was told earlier that day, and told Plaintiff that there was nothing wrong with either the mattress or the base. He further told Plaintiff that Sleepy's would not accept the return of the adjustable base or issue a refund. Angel also offered Plaintiff $200 to resolve the issue which Plaintiff rejected.

33. During the same call Angel advised Plaintiff that the issue with the nonconformity between the mattress and adjustable base was with the Tempur-Pedic mattress and not Sleepy's and that Plaintiff should contact Tempur-Pedic. Plaintiff advised him that he did not want to get caught between Sleepy's and Tempur-Pedic and just wanted a refund. Angel again refused to issue a refund and advised that he would contact Tempur-Pedic.

34. Sleepy's has refused and continues to refuse to cure the non-conformity or accept the return of and issue a refund for the Tempur-Pedic Ergo Plus Adjustable Base which Plaintiff purchased on May 24, 2015.

35. On or about Monday, June 8, 2015, Plaintiff received a telephone call on his cell phone from Amelia, who identified herself as a representative from Tempur-Pedic. Amelia confirmed to Plaintiff that she had been contacted by Sleepy's and after some discussion advised Plaintiff that his Tempur-Pedic mattress should be compatible with the Tempur-Pedic Ergo Plus Adjustable Base, and that Plaintiff should not be experiencing any issues with the mattress not working in conjunction with the adjustable base.

36. Amelia further stated that she was not the right person at Tempur-Pedic to deal with Plaintiff's issue and told Plaintiff that she would have someone else from Tempur-Pedic get back to with him to resolve his issue.

37. No one else form Tempur-Pedic directly contacted Plaintiff at any time after his conversation with Amelia on or about June 8, 2015.

38. The Tempur-Pedic products purchased by Plaintiff, specifically the Tempur-Pedic Weightless Supreme Mattress and the Tempur-Pedic Ergo Plus Adjustable Base, do not work together as advertised by Tempur-Pedic.

39. The Tempur-Pedic mattress and Tempur-Pedic adjustable base that Plaintiff purchased from Sleepy's are "household furniture" as defined by the Furniture Delivery Regulations (N.J.A.C. 13:45A-5.1(d)).

40. The Sales Order Receipt, Customer Invoice and Sales Order Invoice that the Sleepy's Defendants provided to Plaintiff for the purchase of the Tempur-Pedic Weightless Supreme Mattress in February 2013, and the purchase of the Tempur-Pedic Ergo Plus Adjustable Base in May 2015, each contain the following information regarding delivery dates in a bold font that is less than 10 point:

> "THE MERCHANDISE YOU HAVE ORDERED IS PROMISED FOR DELIVERY TO YOU ON OR BEFORE THE STATED DATE ON THE FRONT OF THE INVOICE."

41. The Furniture Delivery Regulations require the following sentence in ten-point bold face type:
> "The merchandise you have ordered is promised for delivery to you on or before (insert date or length agreed upon)." N.J.A.C. 13:45A-5.2(a)

42. The Furniture Delivery Regulations require that the blank space at the end of the sentence set forth in the previous paragraph "shall be filled in by the seller at the time the contract of sale is entered into by the parties or when the sales documents are issued, either as a specific day of a specific month or as a length of time agreed upon by the buyer and seller (for example, "six weeks from date of order"). The date for delivery shall not be pre-printed in the contract prior to the time the contract of sale is entered into by the parties or when the sales documents are issued." N.J.A.C. 13:45A-5.2(b).

43. The Sales Order Receipt and Sales Order Invoice that the Sleepy's Defendants provided to Plaintiff contain the following language regarding delayed delivery in approximately six-point bold font:

> "IF THE MERCHANDISE ORDERED BY YOU IS NOT DELIVERED BY THE PROMISED DELIVERY DATE, SLEEPY'S WILL OFFER YOU THE CHOICE OF (1) CANCELING YOUR ORDER WITH A PROMPT, FULL REFUND OF ANY PAYMENT YOU HAVE MADE, OR (2) ACCEPTING DELIVERY AT A SPECIFIC LATER DATE"

44. The Customer Invoice that the Sleepy's Defendants provided to Plaintiff contains the following language regarding delayed delivery in less than ten-point bold font:

> "IF THE MERCHANDISE ORDERED BY YOU IS NOT DELIVERED BY THE PROMISED DELIVERY DATE, YOU WILL OFFERED THE CHOICE OF (1) CANCELING YOUR ORDER WITH A PROMPT, FULL REFUND OF ANY PAYMENT YOU HAVE MADE, OR (2) ACCEPTING DELIVERY AT A SPECIFIC LATER DATE"

45. The Sales Order Receipt, Customer Invoice and Sales Order Invoice that the Sleepy's Defendants provided to Plaintiff do not contain the language mandated by the Furniture Delivery Regulations disclosing the seller's obligation in the case of a delayed or late delivery. The Furniture Delivery Regulations require the exact following notice in ten-point bold face type:

> "If the merchandise ordered by you is not delivered by the promised delivery date, (insert name of seller) *must* offer you the choice of (1) canceling your order with a prompt, full refund of any payments you have made, or (2) accepting delivery at a specific later date." N.J.A.C. 13:45A-5.3(a) (emphasis added).

46. Instead of the notice specifically mandated by the Furniture Delivery Regulations, the second page of the Customer Invoice and the Sales Order Invoice that the Sleepy's Defendants provided to Plaintiff contain the following language regarding Refunds:

> "If your merchandise cannot be delivered by the date noted on your invoice Sleepy's will offer you the option of an alternate delivery date or a prompt, full refund. All non-stocked special orders require a 50% non-refundable deposit…No

>   refund will be offered after delivery, with the exception of partial adjustments in accordance with Sleepy's Price Guarantee Policy…"

47.     The language quoted in the preceding paragraphs that the Sleepy's Defendants provided to Plaintiff contain language which is contrary to and violates the rights provided to consumers in the Furniture Delivery Regulations, which state as follows:

>   "It shall be unlawful for any person to use any contract or sales agreement that contains any terms, such as "all sales final," "no cancellations" or "no refunds," which violate or are contrary to the rights and responsibilities provided for by this rule. Any contract or sales agreement which contains such a provision shall be null and void and unenforceable." N.J.A.C. 13:45A-5.3(c)

48.     The second page of the Customer Invoice and the Sales Order Invoice that the Sleepy's Defendants provided to Plaintiff contain the following language regarding Limitation of Liability:

>   "Sleepy's hereby disclaims, and buyer hereby waives any and all obligations and liabilities of Sleepy's and all rights, claims and remedies of buyer against Sleepy's, including, but not limited to, all liability with respect to the product or services performed or provided by Sleepy's or its salespeople, agents or representatives. Under no circumstances shall Sleepy's be liable for any consequential, indirect, special, punitive, or incidental damages. The remedies set forth are exclusive, and the liability of Sleepy's with respect to any sale of its products, or anything done in connection therewith, whether in contract, in tort, under strict liability, under any warranty, or otherwise, whether or not arising from negligence, actual or imputed, shall not exceed the purchase price of the product. …"

49.     The language set forth in ¶49 is unlawful under TCCWNA as it attempts to wave remedies available pursuant to N.J.S.A. 56:12-17 which include a statutory civil penalty in addition actual damages and attorneys' fees and costs, and the waiver of those remedies is prohibited by TCCWNA at N.J.S.A. 56:12-16, which states the following:

>   "No consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act…"

50.     The language set forth in ¶49 above limits the amount of damages recoverable to the purchase price of the product which violates a clearly established right of the Plaintiff to recover treble damages and attorney's fees under the Consumer Fraud Act N.J.S.A. 56:8-1 *et seq*., and therefore unlawful under TCCWNA at N.J.S.A. 56:12-15, which states the following:

>   "No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act

which includes any provision that violates any clearly established legal right of a consumer…as established by State or Federal Law"

51.     The Sleepy's Defendants engage in the practice of failing to comply with the provisions of Furniture Delivery Regulations, N.J.A.C. 13:45A-5.1 *et seq*., and TCCWNA as described more fully herein.

52.     The Sleepy's Defendants used and continue to use form sales documents that include provisions the same as or similar to the provisions complained of herein that were in the Sales Order Receipt, Customer Invoice and Sales Order Invoice used in the February 2013 and May 2015 sales document provided to Plaintiff in thousands of transactions where furniture was sold to consumers for future delivery in New Jersey.

## CLASS ACTION ALLEGATIONS

53.     This action is brought and may properly proceed as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.   Plaintiff seeks certification of a class defined as follows:

> All persons who purchased household furniture or furnishings for future delivery from Sleepy's by any method including but not limited to in person at a Sleepy's retail store location, online at a Sleepy's website or by telephone, to be delivered to an address in New Jersey at any time on or after September 1, 2009 where the sales documents used in the transaction were the same as or similar to the Sales Order Receipt, Customer Invoice and/or Sales Order Invoice used in the transactions with Plaintiff in February 2013 and May 2015.
>
> Specifically excluded from the class is any judge or magistrate involved in this matter.

54.     For the purpose of the class definition, the phrase "the same as or similar to" means a sales document that contains one or more  of the following provisions:

> (a) "THE MERCHANDISE YOU HAVE ORDERED IS PROMISED FOR DELIVERY TO YOU ON OR BEFORE THE STATED DATE ON THE FRONT OF THE INVOICE", and does not leave a blank space whereby the delivery date is filled in at the time of sale.
>
> (b) A pre-printed delivery date.
>
> (c)  "IF THE MERCHANDISE ORDERED BY YOU IS NOT DELIVERED BY THE PROMISED DELIVERY DATE, SLEEPY' WILL OFFER YOU…".
>
> (d) IF THE MERCHANDISE ORDERED BY YOU IS NOT DELIVERED BY THE PROMISED DELIVERY DATE, YOU WILL OFFERED …".

    (e) Contains the language quoted in the preceding paragraphs (a, c and d) in less than 10 point type size.

    (f) Requires a non-refundable deposit for all non-stocked special orders.

    (g) Offers no refund to a buyer after delivery of merchandise with the exception of partial adjustments in accordance with Defendant's policy.

    (h) Contains a limitation of liability provision like the one quoted in paragraph 49 above, which waives any and all obligations and liabilities of Sleepy's and all rights, claims and remedies of the buyer against Sleepy's, provides that under no circumstances shall Sleepy's be liable for any consequential, indirect, special, punitive, or incidental damages and or limits the remedies of the buyer to the purchase price of the product.

55. The Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

56. There are questions of law and fact common to the members of the Class that predominate over questions affecting only individuals. These common questions include:

    a. Whether the standard sales document used in the transactions with Plaintiff and all others similarly situated violates the Furniture Delivery Regulations, N.J.A.C. 13:45A-5.1 et seq.

    b. Whether Defendant has a policy and/or practices of failing to specify the delivery date in their sales documents contrary to the requirements of the Furniture Delivery Regulations at N.J.A.C. 13:45A-5.2(b).

    c. Whether Defendant has a policy and/or practice of failing to conspicuously disclose the seller's obligation in the case of a delayed delivery in the sales documents contrary to the requirements of the Furniture Delivery Regulations at N.J.A.C. 13:45A-5.3(a).

    d. Whether the standard contract/sales document used in the transactions with Plaintiff and all others similarly situated violates the Furniture Delivery Regulations at N.J.A.C. 13:45A-5.1 *et seq.*

    e. Whether any or all of the aforementioned violations of the Furniture Delivery Regulations described herein constitute violations of TCCWNA (N.J.S.A. 56:12-14 *et seq.*).

    f. Whether by offering, giving, displaying, or entering into a sales document that contained the aforementioned Limitation of Liability set forth in ¶49 is in violation of TCCWNA at N.J.S.A. at 56:12-16.

    g. Whether by offering, giving, displaying, or entering into a sales document that violates a clearly established right under the Consumer Fraud Act N.J.S.A. 56:8-1 *et seq.*, is in violation of TCCWNA N.J.S.A. at 56:12-15.

57. Plaintiff's claims are typical of the claims of the members of the Class because all such claims arise out of the sale of household furniture or furnishing for future delivery using form documents the same or similar to those used in the transactions with the Plaintiff.

58. Plaintiff has no interests antagonistic to those of the Class.

59. The Class, of which Plaintiff is a member, is readily identifiable.

60. Plaintiff will fairly and adequately protect the interests of the Class, and has retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel has investigated and identified potential claims in the action. Proposed Class Counsel has a great deal of experience in handling class actions, or other complex litigation, and claims of the type asserted in this action.

61. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it is economically impractical for members of the Class to prosecute individual actions.

62. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members.

63. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action. Prosecution as a class action will eliminate the possibility of repetitious litigation.

64. The prosecution of separate actions by individual members of the Class would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

65. Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and all class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

66. A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort, and expense.

67. Plaintiff does not anticipate any difficulty in the management of this litigation.

<u>**Class Claims**</u>

<u>**FIRST COUNT**</u>
**Violations of the Truth-in-Consumer Contract, Warranty and Notice Act as to the Sleepy's Defendants**
**N.J.S.A. 56:12-14** *et seq.*

68. Plaintiff repeats and re-alleges all prior allegations as if set forth at length herein.

69. The Furniture Delivery Regulations require that "[t]he contract forms or sales documents shall show the date of the order and shall contain the following sentence in ten-point bold face type: **The merchandise you have ordered is promised for delivery to you on or before** (insert date or length of time agreed upon)". N.J.A.C. 13:45A-5.2(a).

70. The Furniture Delivery Regulations also require that the blank space at the end of the sentence set forth in the previous paragraph "shall be filled in by the seller at the time the contract of sale is entered into by the parties or when the sales documents are issued, either as a specific day of a specific month or as a length of time agreed upon by the buyer and seller (for example, "six weeks from date of order.")". The date for delivery shall not be pre-printed in the contract prior to the time the contract of sale is entered into by the parties or when the sales documents are issued. N.J.A.C. 13:45A-5.2(b).

71. The Sleepy's Defendants did not include the language specifically required by the Furniture Delivery Regulations at N.J.A.C. 13:45A-5.2(a) and (b) as set forth above in ¶42 and ¶43 in their form sales documents used in their tractions with Plaintiff and those similarly situated.

72. The Sleepy's Defendants did not print the language set forth in ¶41 in ten-point bold face type as required by the Furniture Delivery Regulations at N.J.A.C. 13:45A-5.2(a).

73. Defendant Sleepy's did not leave a blank space at the end of the sentence regarding estimated delivery dates as set forth in ¶41 whereby the seller was to fill in the date of delivery at the time the contract of sale was entered into by the parties.

74. Defendant pre-preprinted the date for delivery on the sales documents prior to the time the contract of sale was entered into by the parties or when the documents were issued contrary to N.J.A.C. 13:45A-5.2(b).

75. The language in the sales documents used by Defendant regarding delivery dates as set forth in ¶41 above is contrary to language required by the Furniture Delivery Regulations at N.J.A.C. 13:45A-5.2(a) and (b).

76. By using language in their sales documents that is contrary to the language required by the Furniture Delivery Regulations regarding the promised delivery date and by failing to use the language required the Sleepy's Defendants violated the Furniture Delivery Regulations at N.J.A.C. 13:45A-5.2(a) and (b).

77. The Furniture Delivery Regulations (at N.J.A.C. 13:45A-5.3(a)) require that "The contract forms or sales documents shall conspicuously disclose the seller's obligation in the case of delayed delivery in compliance with N.J.A.C. 13:45A-5.1 and shall contain, on the first page of the contract from or sales document, the following in ten-point bold face type:

**If the merchandise ordered by you is not delivered by the promised delivery date, (insert name of seller) must offer you the choice of (1) canceling your order with a prompt, full refund of any payments you have made, or (2) accepting delivery at a specific later date."**

78. The Sleepy's Defendants did not print the required language in ten-point bold face type on the form sales documents used in their transactions with Plaintiff and those similarly situated, in violation of the Furniture Delivery Regulations at N.J.A.C. 13:45A-5.3(a)

79. The Sleepy's Defendants used language regarding delayed delivery that was different than the language mandated by the Furniture Delivery Regulations at N.J.A.C. 13:45A-5.3(a) in the form sales documents used in their transactions with Plaintiff and those similarly situated.

80. The language in the form sales documents used by the Sleepy's Defendants in their transactions with Plaintiff and those similarly situated regarding delayed delivery as set forth in ¶44 and ¶45 above is contrary to language required by the Furniture Delivery Regulations at N.J.A.C. 13:45A-5.3(a).

81. By using language in their sales documents that fails to accurately state the language required by the Furniture Delivery Regulations regarding delayed delivery, the Sleepy's Defendants violated the Furniture Delivery Regulations at N.J.A.C. 13:45A-5.3(a).

82. The Furniture Delivery Regulations (at N.J.A.C. 13:45A-5.3(c)) state that "It shall be unlawful for any person to use any contract or sales agreement that contains any terms, such as "all sales final," "no cancellations" or "no refunds," which violate or are contrary to the rights and responsibilities provided for by this rule. Any contract or sales agreement which contains such a provision shall be null and void and unenforceable."

83. The language in the form sales documents used by the Sleepy's Defendants in their transactions with Plaintiff and those similarly situated that requires "a 50% non–refundable deposit" as set forth in ¶47 above is contrary to the language required by the Furniture Delivery Regulations at N.J.A.C. 13:45A-5.3(c).

84. By using language and provisions in their form sales documents that is unlawful pursuant to the Furniture Delivery Regulations, the Sleepy's Defendants violated the Furniture Delivery Regulations at N.J.A.C. 13:45A-5.3(c).

85. TCCWNA at N.J.S.A. 56:12-15 provides that "no seller or creditor…shall…enter into any written consumer contract or give or display any written consumer… notice…which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller or creditor… as established by State or Federal Law…"

86. Plaintiff and those similarly situated are consumers as defined by the Truth-in-Consumer Warranty and Notice Act (TCCWNA), at N.J.S.A. 56:12-15.

87. The form sales documents including but not limited to the Sales Order Receipt, Customer Invoice and Sales Order Invoice that the Sleepy's Defendants used in the transactions with Plaintiff that were used in the transactions with others similarly situated to Plaintiff are "consumer contracts" and or "notices" as defined by TCCWNA, at N.J.S.A. 56:12-15.

88. Each of the Sleepy's Defendants is a "seller" within the meaning of TCCWNA with respect to Plaintiff and others similarly situated, and offered and entered into contracts and/or provided notices that contained provisions contrary the Furniture Delivery Regulations, in violation of TCCWNA at N.J.S.A. 56:12-15.

89. The Sleepy's Defendants offered and/or entered into a written consumer contract and/or gave or displayed a written notice which included a provisions that violated Defendants' clearly established responsibilities as established by New Jersey law at the time the offer was made, the contract was signed, or the notice was given.

90. The Furniture Delivery Regulations set forth clearly established legal rights of consumers and responsibilities of sellers, as established by New Jersey law at the time that the form sales documents were used in the transactions with Plaintiff and others similarly situated.

91. The Sleepy's Defendants offered and/or entered into written consumer contracts and/or gave or displayed written notices which contained a Limitation of Liability provision the same as or similar to the provision set forth in ¶49 above that violated the clearly established rights of Plaintiff and all others similarly situated as established by the New Jersey Consumer Fraud Act 56:8-1 *et seq.*, at the time the offer was made, the contract was signed, or the notice was given in violation of TCCWNA at N.J.S.A. 56:12-15.

92. TCCWNA at N.J.S.A. 56:12-16 provides that "no consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act…"

93. The Sleepy's Defendants offered and/or entered into a written consumer contract and/or gave or displayed a written notice which contained a Limitation of Liability provision the same as or similar to the provision set forth in ¶49 whereby the Plaintiff and all others similarly situated waived "…any and all obligations and liabilities of Sleepy's and all rights, claims, and remedies of buyer..", in violation of TCCWNA at N.J.S.A. 56:12-16.

94. Each of the Sleepy's Defendants as a "seller" in the transactions with Plaintiff and those similarly situated are directly liable to Plaintiff and putative class members for damages pursuant to TCCWNA (N.J.S.A. 56:12-17).

95. The Sleepy's Defendants are liable to Plaintiff and putative class members for a statutory civil penalty of not less than $100 for each violate form sales document provided to Plaintiff and each putative class member plus reasonable attorneys' fees and costs pursuant to N.J.S.A. 56:12-17.

## Individual Claims

## SECOND COUNT
### Violations of the Consumer Fraud Act as to the Sleepy's Defendants
### Based Upon Violations of the New Jersey Uniform Commercial Code N.J.S.A. 12A:2-601 *et seq*. and the Furniture Delivery Regulations

96. Plaintiff repeats and re-alleges all prior allegations as if set forth at length herein.

97. The New Jersey Uniform Commercial Code states that "…if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may: (a) reject the whole; (b) accept the whole; (c) accept any commercial unit or units and reject the rest." N.J.S.A. 12A:2-601 *et seq.*

98. Plaintiff advised an agent of the Sleepy's Defendants of the nonconformity with the Tempur-Pedic Ergo Plus Adjustable base on the date of delivery, May 30, 2015, and attempted to reject delivery of same.

99. Representatives of the Sleepy's Defendants inspected the Tempur-Pedic Ergo Plus Adjustable Base in Plaintiff's home and confirmed the non-conformity and incompatibility with Plaintiff's Tempur-Pedic Weightless Supreme king size mattress.

100. The Sleepy's Defendants delivered nonconforming goods to Plaintiff.

101. The Sleepy's Defendants refused Plaintiff's rejection of the nonconforming goods, specifically the Tempur-Pedic Ergo Plus Adjustable Base.

102. The New Jersey Uniform Commercial Code (at N.J.S.A. 12A:2-608) states "(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances. (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it. (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

103. Plaintiff spoke with another agent of the Sleepy's Defendants on June 7, 2015 advising them of the nonconformity relating to the Tempur-Pedic base and mattress, and revoked acceptance of same.

104. Representatives of the Sleepy's Defendants subsequently inspected the Tempur-Pedic Ergo Plus Adjustable Base in Plaintiff's home and confirmed the non-conformity and incompatibility with Plaintiff's Tempur-Pedic Weightless Supreme king size mattress.

105. The Sleepy's Defendant did not attempt to cure the nonconformity or accept Plaintiff's revocation of acceptance.

106. Plaintiff revoked acceptance within a reasonable amount of time after he first discovered the nonconformity with the Tempur-Pedic base and mattress not working together.

107. The Sleepy's Defendants' refusal to allow Plaintiff to revoke acceptance within a reasonable amount of time for the nonconforming goods consisting of the Tempur-Pedic Ergo Plus Adjustable Base, and the Tempur-Pedic Weightless Supreme Mattress, violated the Uniform Commercial Code N.J.S.A. 12A:2-608, and is an unconscionable commercial practice or other affirmative act which is a violation of the Consumer Fraud Act. N.J.S.A. 56:8-2.

108. The furniture Delivery Regulations at N.J.A.C. 13:45A-5.1(e) states:

> For the purposes of this section, delivery of furniture or furnishings that are damaged or that are not the exact size, style, color or condition indicated on the sales contract, shall not constitute delivery as required by (a)1 above.
>
> 1) Upon receipt of such non-conforming merchandise, the consumer shall have the option of either accepting the furniture or of exercising any of the options set forth in (a)2 above.

109. The Sleepy's Defendants' refusal to allow Plaintiff returns the nonconforming the Tempur-Pedic Ergo Plus Adjustable Base violated the Furniture Delivery Regulations.

110. The Sleepy's Defendants violation of the Furniture Delivery Regulations is a per se violation of the Consumer Fraud Act pursuant to N.J.A.C. 13:45A-5.1(c).

111. The New Jersey Consumer Fraud Act states that, "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." N.J.S.A. 56:8-2.

112. The Sleepy's Defendants' failure to comply with the Uniform Commercial Code is an unconscionable commercial practice or other affirmative act which is a violation of the Consumer Fraud Act. N.J.S.A. 56:8-2.

113. The Sleepy's Defendants refusal to allow Plaintiff to reject or revoke acceptance lacks the good faith and fair dealing as required by the Uniform Commercial Code.

114. As a result of Defendant's violations of the UCC, the Furniture Delivery regulations and the Consumer Fraud Act Plaintiff suffered and is continuing to suffer an ascertainable loss, including without limitation, the purchase price of the Tempur-Pedic mattress for $3,690.42, the purchase price of the Tempur-Pedic Ergo Plus Adjustable Base for $2,781.98, and/or the replacement cost of obtaining a compatible mattress and adjustable base.

## THIRD COUNT
### Violations of the Consumer Fraud Act as to Defendant Tempur-Pedic
### N.J.S.A. 56:8-1 *et seq*.

115. Plaintiff repeats and re-alleges all prior allegations as if set forth at length herein.

116. The New Jersey Consumer Fraud Act states that, "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." N.J.S.A. 56:8-2

117. Plaintiff visited Tempur-Pedic's website and saw the advertisement for the Tempur-Pedic Ergo Plus Adjustable Base prior to purchasing.

118. Tempur-Pedic's website advertised the adjustable base as being compatible with Plaintiff's Tempur-Pedic Weightless Supreme mattress.

119. Plaintiff relied on Tempur-Pedic's advertisement.

120. Tempur-Pedic's advertisement made misrepresentations as to the Tempur-Pedic Ergo Plus Adjustable Base being compatible with Plaintiff's Tempur-Pedic Weightless Supreme Mattress.

121. Tempur-Pedic's use of a false advertisement is an unconscionable commercial practice, deception, fraud, false pretense, false promise and or misrepresentation of a material fact upon which the Plaintiff relied and a violation of the Consumer Fraud Act. N.J.S.A. at 56:8-2.

122. By falsely advertising the adjustable base as being compatible with Plaintiff's Tempur-Pedic Weightless Supreme mattress Defendant Tempur-Pedic engaged in unconscionable

commercial practices or other affirmative acts in violation of the Consumer Fraud Act at N.J.S.A. 56:8-2.

123.  As a direct result of Defendant Tempur-Pedic's unlawful acts in violation of the Consumer Fraud Act, Plaintiff suffered and is continuing to suffer an ascertainable loss, including without limitation, the purchase price of the Tempur-Pedic mattress for $3,690.42, the purchase price of the Tempur-Pedic Ergo Plus Adjustable Base for $2,781.98, and/or the replacement cost of obtaining a compatible mattress and adjustable base.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

*As to the Class Claims in the First Count*

a. Certification of a class for monetary relief pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure;

b. Appointment of Plaintiff as class representative and his attorneys as Class Counsel;

c. Declaratory judgment that the Sleepy's Defendants violated the Furniture Delivery Regulations, CFA and TCCWNA.

d. An award of statutory civil penalties in the amount of not less of $100 to each person for each a contract or Notice provided to Plaintiff and each member of the class that contained a provision that violated the TCCWNA at N.J.S.A. 56:12-15 or N.J.S.A. 56:12-16 pursuant to the TCCWNA at N.J.S.A. 56:12-17;

e. Injunctive relief prohibiting the Sleepy's Defendants from any further violations of the Furniture Delivery Regulations (N.J.A.C. 13:45A-5.1 *et seq.*); and the TCCWNA (N.J.S.A. 56:12-14 *et seq.*);

f. An award of attorneys' fees and costs, pursuant to the TCCWNA at N.J.S.A. 56:12-17;

g.  Pre-judgment and post-judgment interest;

h. Such other and further relief as the Court deems equitable and just;

*As to the Individual Claims in the Second and Third Counts*

i. Declaratory judgment that the Sleepy's Defendants violated the NJ UCC, the Furniture Delivery Regulations and the CFA, and that Tempur-Pedic violated the CFA;

j. Injunctive relief prohibiting Tempur-Pedic from any further violations of the CFA;

k.  Injunctive relief prohibiting the Sleepy's Defendants from any further violations of the NJ UCC, the Furniture Delivery Regulations (N.J.A.C. 13:45A-5.1 *et seq.*); and the CFA;

l.  Treble damages pursuant to the New Jersey Consumer Fraud Act. N.J.S.A. 56:8-19;

m.  Actual and statutory damages pursuant to the New Jersey Uniform Commercial Code;

n.  Reasonable attorney fees and costs of suit pursuant to the CFA at N.J.S.A. 56:8-19;

o.  Pre-judgment and post-judgment interest; and

p.  Such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

## DESIGNATION OF TRIAL COUNSEL

Andrew R. Wolf, Esq. is hereby designated as trial counsel for the Plaintiffs in the above matter.

## CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated:  October 15, 2015         s/Andrew R. Wolf
                                 Andrew R. Wolf, Esq.
                                 The Wolf Law Firm, LLC
                                 1520 U.S. Highway 130, Suite 101
                                 North Brunswick, NJ  08902
                                 Tel. 732-545-7900
                                 Fax: 732-545-1030
                                 awolf@wolflawfirm.net
                                 *Attorneys for Plaintiff and others similarly situated*